UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80646-CIV-MARRA

SAXON FINANCIAL GROUP, INC., a
Florida corporation,

Plaintiff,

vs.

DR. MATTHIAS RATH; and HEALTH NOW,
INC., a dissolved California corporation,
jointly and severally,

Defendants.
_____/

DR. MATTHIAS RATH,

Counterclaim Plaintiff,

vs.

SAXON FINANCIAL GROUP, INC., a
Florida corporation; SMALL & SMALL, P.A.,
a Florida corporation; and MICHAEL B. SMALL,

Counterclaim Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon the Motion to Dismiss or Strike Affirmative Defenses and Second Amended Counterclaim (DE 65). The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

On June 2, 2011, Plaintiff Saxon Financial Group, Inc. ("Saxon") filed suit against Defendant Dr. Matthias Rath ("Rath," "Defendant")[1] for breach of contract (count one); account stated (count two); quantum meruit (count three) and unjust enrichment (count four) arising out of Rath's alleged failure to pay for legal services to Small & Small, P.A. ("Small") pursuant to an Amended Legal Services Agreement dated October 31, 1996. (Compl. at ¶¶ 5, 15-37, DE 1; Agreement, Ex. A, DE 1.[2])  Small and Michael B. Small, individually ("Mr. Small"), have assigned all of their claims and contractual rights against Defendants to Saxon for collection and recovery. (Compl. at ¶ 10; Assignment, Ex. C, DE 1.)

On May 10, 2012, Rath filed his Amended Answer, Affirmative Defenses and Second Amended Counterclaim. (DE 61.)  The Amended Answer and Affirmative Defenses are asserted only against Saxon, and the Second Amended Counterclaim is brought against Saxon, Small and Mr. Small (collectively, "Saxon and the Smalls").  Among the 20 affirmative defenses asserted against Saxon are: recoupment (second affirmative defense) and inequitable windfall and/or unjust enrichment (seventh affirmative defense).  The counterclaim includes claims for declaratory relief (count one); professional negligence/legal malpractice (count two); breach of

---

[1] On December 14, 2011, Plaintiff filed a notice of voluntary dismissal without prejudice as to another Defendant, Health Now, Inc. (DE 26.)

[2] Paragraph 15 of the Agreement states:

> Warranties and Representations: We make no representations or warranties concerning the favorable outcome of the scope of employment.  All of our statements to Client in these matters are statements of our opinion only.

(Agreement ¶ 15.)

2

fiduciary duty (count three); deceptive and unfair trade practices pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (count four); fraud in the inducement (count five); fraud (count six); constructive fraud (count seven); negligent misrepresentation (count eight); breach of contract/implied breach of covenant of good faith and fair dealing (in the alternative) (count nine); unjust enrichment (count ten) and accounting (in the alternative) (count eleven). In bringing these counterclaims, Rath states that he "seeks affirmative relief in recoupment against Saxon and the Smalls." (Am. Counterclaim ¶ 3.)

Saxon and the Smalls move to dismiss the counterclaim or strike the affirmative defenses and make the following arguments.  First, they claim that the applicable statutes of limitation have run on the counterclaims and Rath cannot seek affirmative relief against a third-party "disguised" as recoupment.  (Mot. at 6-8.)  Further, they seek dismissal of any affirmative claim for an amount greater than the claims stated by Saxon, contending that claims for recoupment are limited to the amounts stated in the underlying claims.  (Mot. at 8.) They also seek dismissal of the claims for breach of fiduciary duty, fraud, misrepresentation and constructive fraud based on the economic loss rule.  (Mot. at 9-11, 14-17.)  Moreover, they claim that the fraud claims are not pled with particularity and a FDUTPA claim based on an attorney's competence and strategy is not cognizable. (Mot. at 12-13, 17-18.)  Next, they assert the declaratory relief claim is barred by the statute of limitations and the breach of good faith and fair dealing claim is duplicative of the breach of contract claim.  (Mot. at 19-21.)  Saxon and the Smalls also move to strike an exhibit to the Second Amended Counterclaim, the seventh affirmative defense and the demand for jury trial. (Mot. at 23-24.)

II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike, however, are generally disfavored by the court. See Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir.1991); Westfield Ins. Co. v. Northland Ins. Co., No.

08-80748-CIV, 2008 WL 4753994, at * 2 (S.D. Fla. Oct.28, 2008). The reason is that courts consider striking a pleading to be a "drastic remedy to be resorted to only when required for the purposes of justice." Augustus v. Bd. of Pub. Instruction of Escambia County, Fla., 306 F.2d 862, 868 (5th Cir.1962)[3] (quoting Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir.1953)); Exhibit Icons, LLC v. XP Companies, LLC, 609 F. Supp. 2d 1282, 1300 (S.D. Fla.2009).  That stated, an affirmative defense may be stricken if the defense is "insufficient as a matter of law." Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla.2002) (citing Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla.1976). A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law. Id.

   III.  Discussion

   A. Recoupment

Saxon and the Smalls assert that the claims for declaratory relief, legal malpractice, breach of fiduciary duty, fraud in the inducement, fraud, constructive fraud, negligent misrepresentation, unjust enrichment, accounting and the claim brought pursuant to the FDUTPA are all time-barred.  Specifically, they claim that these causes of actions cannot be brought as affirmative actions for recoupment because Small and Mr. Small did not assert any claims against Rath.  As a result, they contend Rath cannot maintain an affirmative third-party action for recoupment even if labeled as a counterclaim.  They also claim that, with respect to Saxon,

---

[3] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Rath's compulsory counterclaim for recoupment cannot exceed the amount sought by Saxon.

In Allie v. Ionata, the Florida Supreme Court held that "a compulsory counterclaim in recoupment permits the recovery of an affirmative judgment even though barred as an independent cause of action by the running of the statute of limitations." Allie v. Ionata, 503 So. 2d 1237, 1239 (Fla. 1987).  In so holding, the "Allie court explained that the purpose of a statute of limitations is to protect unwitting defendants from the unexpected enforcement of stale claims brought by plaintiffs who have slept on their rights. This purpose is not served if a statute of limitations is used as a shield to bar meritorious defensive actions when plaintiffs, by bringing their claims, have effectively acknowledged that they are prepared to litigate all aspects of the matter."[4] Maynard v. Household Fin. Corp. III, 861 So. 2d 1204, 1207 (Fla. Dist. Ct. App. 2003) (citing Allie, 503 So. 2d at 1240.)  Hence, based on the foregoing, Rath may proceed with his claims that sound in recoupment.

Nonetheless, Saxon and Mr. Small posit that "Saxon is the only party subject to counterclaims for recoupment by virtue of the assignment [by Small and Mr. Small] and because Saxon is the only party that asserted claims against Rath. The Smalls are not named plaintiffs in this action and did not assert any claims against Rath; therefore, the Smalls cannot be subject to the expired claims brought by Rath." (Reply at 5.)   The Court rejects this argument.  Simply put, it would be inequitable for the Smalls to be able to avoid liability on malpractice claims simply

---

[4] Allie did note two exceptions to this rule; i.e., when the defensive claim seeks specific performance of an option to buy land or transfer of some other unique, fungible property and when the defensive claim seeks to enforce the statutory right of rescission under the federal Truth in Lending Act. Rybovich Boat Works, Inc. v. Atkins, 585 So 2d 270, 271 (Fla. 1991); Beach v. Great W. Bank, 692 So.2d 146, 149-50 (Fla.1997).

by assigning their right to collect the fees related to the legal services provided. Beach v. Great Western Bank, 670 So. 2d 986, 990 (Fla. Dist. Ct. App. 1996) (noting that recoupment is equitable in nature and thus prevents an unjust result); see also Securities and Exchange Commission v. R.J. Allen & Assocs., Inc., 386 F. Supp. 866, 880 (S.D. Fla. 1974) (observing that recoupment is an equitable remedy of "ancient origin"). Otherwise, in an effort to avoid malpractice claims, an attorney could wait for the two year professional negligence cause of action to expire, assign his or her right to payment to a third-party who can then sue within the four or five year statutes of limitation for breach of contract.[5] Cf. Cherney v. Moody, 413 So. 2d 866, 869 (Fla. Dist. Ct. App. 1982) ("we feel that an attorney's fiduciary relationship with a client and the Florida Bar's Code of Professional Responsibility would be ill-served by a holding which permitted an attorney to avoid a counterclaim for malpractice by awaiting the running of the statute of limitations before filing suit for the collection of fees for legal representation"); see Florida Statutes § 95.11(2)(b) and (3)(k).

Accordingly, the Court rejects the Smalls' reliance on Willoughby v. Dowda and Fields, Chartered, 643 So. 2d 1098 (Fla. Dist. Ct. App. 1994). There, the plaintiff appealed from a summary judgment order denying him affirmative relief on his malpractice counterclaim. The counterclaim was brought against an individual attorney and that attorney's professional association in a lawsuit initiated by the attorney's professional association for legal services. Id.

---

[5] The Court also rejects Saxon and the Smalls' argument, raised for the first time in the reply memorandum, that Rath does not sufficiently plead alter ego theories. (Reply at 3.) See Rule 7.1(c) of the Southern District of Florida ("reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); Tallahassee Mem. Regional Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n. 16 (11th Cir.1987) ("it is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief) (citing United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir.1984)).

at 1099. The court held that the client's claim in recoupment could not be brought against the individual attorney since that individual attorney had not brought any claim against the client. Id. Willoughby is inapposite because it did not deal with an assignment of the right to collect legal fees to a party who could have no liability for legal malpractice. In Willoughby, the professional association that provided the legal services was answerable for the malpractice claim. If the Smalls' position is adopted in this case, their use of an assignment will permit them to avoid responsibility for the alleged malpractice. As such, the Court finds that the claim in recoupment against Small and Mr. Small is not time-barred.

Finally, Saxon and the Smalls assert that there is a "discrepancy" in legal authority as to whether a compulsory counterclaim for recoupment can be asserted to obtain an affirmative judgment in excess of the amount of the plaintiff's claim, and further assert that the authority upon which they rely for this proposition is "good" and "binding." (Reply at 7.) All of the cases upon which they rely, however, were decided by the Florida Supreme Court before Allie. Hence, the holding of Allie is controlling. For this reason, the claim in recoupment against Saxon may also proceed for affirmative relief.[6]

B.  Economic Loss Rule

Saxon and the Smalls move to dismiss the claims for breach of fiduciary duty, fraud in the inducement, fraud, constructive fraud and negligent misrepresentation based upon the economic loss rule.

In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532,

---

[6] For this reason, the Court rejects Saxon and the Smalls' application to strike the claim for punitive damages. (Mot. at 18.)

536 (Fla. 2004), the Florida Supreme Court explained the two different circumstances to which the economic loss rule applies in Florida: The first is the "contractual privity economic loss rule." That rule applies when parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. The rule is designed to prevent the parties from "circumventing the allocation of losses set forth in the contract" by making a claim for economic loss in tort. Id.; see also Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. Dist. Ct. App. 2000) (the economic loss rule bars recovery in tort where the act "complained of relates to the performance of the contract."). "[C]ommercial parties are more than capable of protecting themselves against defective products by bargaining for such protection in their contracts." Tyco Safety Products Canada, Ltd. v. Abracon Corp., No. 08-80604-CIV, 2008 WL 4753728, at * 4 n.5 (S.D. Fla. 2008) (citing Jarmco, Inc. v. Polygard, Inc., 668 So. 2d 300 (Fla. Dist. Ct. App.1996)).

The second application is the "products liability economic loss rule." This rule applies when there is a defect in a product that causes damage to the product, but causes no personal injury or damage to other property. Indemnity Insurance, 891 So. 2d at 536-38. The "products liability economic loss rule" bars a tort cause of action where a product is involved, when the product damages only itself, and the losses are purely economic. See Abracon Corp., 2008 WL 4753728, at * 4 (citing Florida Power and Light Co. v. Westinghouse Electric Corp., 510 So.2d 899, 900 (Fla.1987)). The "other property" exception to the economic loss rule is limited to "property unrelated and unconnected to the product sold." Id. (citing Jarmco, Inc. v. Polygard, Inc., 668 So. 2d 300 (Fla. Dist. Ct. App.1996)).

It is undisputed that this case does not involve a product liability claim. The case turns on

the attorney/client relationship memorialized in the parties' Amended Legal Services Agreement. The economic loss rule "has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996).

Significantly, none of the acts of which Rath complains in the breach of fiduciary duty count are independent of the acts alleged in the breach of contract claim. In fact, they are virtually identical. Compare Am. Counterclaim ¶ 59 with Am. Counterclaim ¶ 95. As such, the economic loss rule bars this claim. See Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc., 184 F. App'x. 894 (11th Cir. 2006) (citing Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532 (Fla. 2004) (the economic loss rule does apply "where the parties are in contractual privity and one seeks to recover damages in tort for matters arising from the contract")); Premix–Marbletite Mfg. Corp. v. SKW Chems., Inc., 145 F. Supp.2d 1348, 1358 (S.D. Fla. 2001) ("when the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies"); Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 78 (Fla. Dist. Ct. App.1997) (when the misrepresentation is "inseparable from the essence of the parties' agreement, the economic loss rule applies"). Similarly, the economic loss rule bars the claims for fraud, constructive fraud and negligent misrepresentation. Compare Counterclaim ¶¶ 76, 84, 88 with Counterclaim ¶ 95.

On the other hand, the Florida Supreme Court has held that fraudulent inducement is an

independent tort requiring proof of facts separate from a breach of contract action. See HTP, 685 So. 2d at 1239. Thus, an "action on a contract and for fraud in inducing plaintiff to enter into such a contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other." Id. (citations and quotations omitted). Recent Florida appellate decisions have stated that "[t]he test to determine if the economic loss rule applies is to ask if the fraud alleged is in an act of performance or in a term of the bargain." D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. Dist. Ct. App. 2003); see also Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc., 974 So.2d 1176, 1182 (Fla. Dist. Ct. App. 2008); Bankers Mutual Capital Corp. v. United States Fidelity and Guaranty Co., 784 So. 2d 485, 488 (Fla. Dist. Ct. App. 2001); Allen v. Stephan Co., 784 So. 2d 456, 458 (Fla. Dist. Ct. App. 2000). If the alleged fraud is an act of performance, it is barred by the economic loss rule, whereas if the fraud is in a term of the bargain, it is not barred by the economic loss rule. See Allen, 784 So. 2d at 458; see also Luigino's Intern. v. Miller, 311 F. App'x. 289, 294 (11th Cir.2009) (noting that economic loss rule would not apply to bar a fraudulent inducement claim based on a misrepresentation regarding ownership of property despite fact that the misrepresentation was expressly set forth in lease agreement because the misrepresentation induced plaintiff to enter into a contract that was incapable of performance given that defendant did not actually own the property) (citing Vesta, 974 So.2d at 1181-82)).

   Notably, Rath alleges that much of the fraudulent conduct occurred in the course of the Smalls' representation. (Am. Counterclaim ¶ 22.) At the same time, Rath alleges that the Smalls made false pre-contract formation statements to induce him to enter into the contract (Am. Counterclaim ¶ 69). To the extent the allegations concern statements made during the

representation, those allegations cannot form the basis of a claim for fraud in the inducement. Pre-contract representations, however, may form the basis of a fraudulent inducement claim, assuming those comments do not contradict the subsequently-entered into contract. Topp v. Uniden Am. Corp., 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) ("No action for the tort of fraud in the inducement will lie where the alleged fraud contradicts a subsequent written contract."). Here, Rath relies upon alleged misrepresentations and omissions regarding the Smalls' ability to litigate the case. Given that the Smalls are attorneys, Rath was entitled to consider the representations as statements of facts, and not as opinion and promises of future performance.[7] See Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 2001). Hence, the Court finds that Rath has properly pled a claim for fraud in the inducement.

Therefore, the claims for breach of fiduciary duty, fraud, constructive fraud and negligent misrepresentation are barred by the economic loss rule.[8] The claim for fraud in the inducement is not and it may proceed.

C. FDUTPA claim

"A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation and (3) actual damages." City First Mortage Corp. v. Barton, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869

---

[7] Moreover, the Court rejects Saxon and the Smalls' argument that the alleged fraud contradicts the Agreement or was incorporated into the Agreement. To the contrary, the Court finds that the language of the Agreement states that there is no guarantee as to a particular legal outcome, whereas the statements of which Rath complains concern alleged misrepresentations and omissions relating to the skills and experience of the Smalls. These statements are neither contradictory nor incorporated into the Agreement.

[8] The Court need not address the argument that the dismissed claims were not pled with particularity.

(Fla. Dist. Ct. App. 2006), review denied, 962 So. 2d 335 (Fla. 2007)); see Kia Motors Am. Corp. v. Butler, 985 So.2 d 1133, 1140 (Fla. Dist. Ct. App. 2008); KC Leisure, Inc. v. Haber, 972 So.2d 1069, 1073 (Fla. Dist. Ct. App. 2008).  An unfair practice is "one that offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." PNR, Inc. v. Beacon Property Management, Inc., 842 So. 2d 773, 777 (Fla. 2003); Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App.2006). FDUTPA "applie[s] to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single  party, a single transaction, or a single contract."  PNR, 842 So.2d at 777.

In moving to dismiss this claim, Saxon and the Smalls argue that claims directed towards an attorney's competence and strategy do not rise to the level of an unfair or deceptive trade practice. (Mot. at 12.)   In support, they rely on Kelly v. Nelson, Mullins, Riley & Scarborough, LLP, No.8:01CV1176T27MAP , 2004 WL 4054841, at * 4 (M.D. Fla. Nov. 17, 2004).  The Kelly court assumed that FDUTPA's liberal construction would apply to the provision of legal services, but found that the conduct alleged did not rise to the level of an unfair or deceptive trade practice. Id.  In so holding, the Kelly court noted that a similar statute in Connecticut subjected attorneys only to the "entrepreneurial or commercial aspects of the profession of law such as the solicitation of business and billing practices, as opposed to claims directed at the competence of and strategy employed by the attorney." Id. at n.11 (internal quotation marks omitted).  Given that the parties have pointed to no Florida cases stating that FDUPTA does not apply to attorneys, the Court will not find, as a matter of law, that attorneys are exempt from FDUPTA.  Instead, to the extent Rath has alleged violations pertaining to a pattern of intentional

13

overcharging, which includes churning and padding (Am. Counterclaim ¶ 2), the claim can proceed. Rath should, however, amend his claim to include this allegation in the FDUTPA count. Likewise, this claim should be amended to include the allegations contained in the response to the motion; namely, that the Smalls misrepresented their ability to handle an intellectual property case as well as the value of the case. (Resp. at 19.) The remaining allegations (Am. Counterclaim ¶ ¶ 64-65) address the competency and strategy of the Smalls and do not constitute a unfair or deceptive act. For these reasons, the Court will permit Rath to amend this claim. [9]

### D. Breach of Good Faith and Fair Dealing

In interpreting Florida law, the Eleventh Circuit has held that "a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Centurion Air Cargo, Inc. v. United Parcel Svc. Co., 420 F.3d 1146, 1152 (11th Cir. 2005); Burger King Corp. v. Weaver, 169 F.3d 1310, 1316 (11th Cir. 1999). Nor can this claim be invoked "to override the express terms of the agreement between the parties." Insurance Concepts and Design, Inc. v. Healthplan Svcs., Inc., 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001). The breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches instead to the performance of a specific contractual obligation. Centurion Air, 420 F.3d at 1151; Snow v.

---

[9] The Court rejects Saxon and the Smalls argument, raised for the first time in the reply brief, that the FDUPTA claim is not pled with particularity and has not "specifically alleged actual damages." (Reply at 11.) See Rule 7.1(c) of the Southern District of Florida; Tallahassee Mem. Regional Med. Ctr. v. Bowen, 815 F.2d at 1446 n. 16. In any event, the Court notes that the claim does allege actual damages. (Am. Counterclaim ¶ 67.)

Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005).  In addition, a breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim.  Enola Contracting Svcs, Inc. v. URS Group, Inc., No. 5:08cv2-RS-EMT, 2008 WL 1844612, at * 3 (N.D. Fla. Apr. 23, 2008); Trief v. American General Life Ins. Co., 444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006); Shibata v. Lim, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000).  Lastly, Florida courts have stated that this rule comes into play "when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards."  Speedway SuperAmerica, LLC v. Tropic Enterprises, Inc., 966 So.2d 1, 3 (Fla. Dist. Ct. App. 2007); see PL Lake Worth Corp. v. 99Cent Stuff-Palm Springs, 949 So.2d 1199, 1201 (Fla. Dist. Ct. App.2007),

 Based on the foregoing, this count, as pled, fails to demonstrate a breach of the implied covenant of good faith and fair dealing.  Significantly, this count duplicates the allegations supporting the breach of contract claim (compare Am. Counterclaim ¶ 95 with Am. Counterclaim ¶ 97).  It is therefore impossible for the Court to distinguish between these two claims.  The Court will permit Rath to amend this claim.  In doing so, Rath must state that the Smalls breached an express provision of the contract and that the contract is silent regarding the manner by which that express provision must be carried out.  See Bradman v. Mental Health Network, Inc., No. 08-61376-CIV, 2008 WL 5110524, at * 4 (S.D. Fla. Dec. 2, 2008) (citing Speedway, 966 So. 2d at 3; PL Lake Worth, 949 So. 2d at 1201)).  In identifying the express contractual provision at issue, Rath must take care not to duplicate the allegations supporting the breach of contract claim.

### E. Unjust Enrichment

The Court rejects Saxon and the Smalls' argument that Rath cannot assert a claim for unjust enrichment because an express contract exists and the claim lacks the allegation that there is no adequate remedy at law.  At the pleading stage, Plaintiffs are not precluded from pleading claims for both breach of contract and unjust enrichment. See Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (Fla. Dist. Ct. App.1998) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature."); see also Rule 8(d)(2) of the Federal Rules of Civil Procedure ("a party may set out 2 or more statements of a claim or defense alternatively or hypothetically"); Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) (citing Manicini Enterprises, Inc. v. American Exp. Co., 236 F.R.D. 695, 698-99 (S.D. Fla. 2006) (a plaintiff may plead inconsistent or alternative theories of relief)).  In addition, it is not the allegation of the existence of a contract, but the showing that an express contract exists that will cause the unjust enrichment count to fail. Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. Dist. Ct. App.1998). Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature.

### F. Motion to Strike

Saxon and the Smalls move to strike exhibit 1 to the Second Amended Counterclaim, the seventh affirmative defense of unjust enrichment and the demand for jury trial.  (Mot. at 23-24.)

The Court will deny the motion to strike.  Exhibit 1, which is labeled as "trial costs/expense budget (estimated)," states that the estimated budget for the underlying litigation was $95,800.00.  The Amended Counterclaim asserts that this estimate renders the amount

actually spent on the litigation, allegedly over $5 million, excessive. (Am. Counterclaim ¶ 40.) Saxon and the Smalls contend that Rath only included a portion of the budget and attach a document that they contend is complete. (Mot. at 23-24; Ex. E, DE 65.) At this stage in the proceeding, the Court must take all the facts alleged by Rath to be true. Therefore, Saxon and the Smalls have not advanced an appropriate basis to strike Exhibit 1.

The Court will deny without prejudice the motion to strike the jury demand. This issue will, however, be resolved prior to trial. Lastly, the Court rejects the request to strike Rath's seventh affirmative defense of unjust enrichment. Saxon and the Smalls contend this affirmative defense is an independent cause of action. The Court finds that the counterclaim for unjust enrichment and the affirmative defense of unjust enrichment are not "mirror images" of each other. See LeMaster v. USAA Life Ins. Co., No. 95–1124–CIV–T–17(E), 1995 WL 708656, at * 3 (M.D. Fla. Nov. 27, 1995). Indeed, the affirmative defense seeks to prevent a windfall to Plaintiffs in the event that they prevail in their action, whereas the counterclaim seeks money damages, in the event Rath prevails.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion to Dismiss or Strike Affirmative Defenses and Second Amended Counterclaim (DE 65) is **GRANTED IN PART AND DENIED IN PART**. Rath is granted leave to amend within 14 days of entry of

this Order, consistent with the directives of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of August, 2012.

_____
KENNETH A. MARRA
United States District Judge